Case number 14-5279, Florent Bayala, Appellant v. United States Department of Homeland Security, Office of the General Counsel. Mr. Cleveland for the Appellant, Mr. Ades Banajo for the Appellant. Good morning. May it please the Court, I am David Cleveland, Counsel for Appellant, Mr. Bayala. I'd like to reserve three minutes of my time for rebuttal. The means the. I think we can all agree on that. I'm sorry, what was that? The means the. Congress said the agency must give the reasons for its actions. This means the real reasons, not a blunderbuss expectoration of possibilities. Could I get clear of something? You said in your filings that you do not now contest the current withholding of the assessment. Did you just mean not now because you want to fight about getting a determination letter and then you're willing to do your exhaustion? Or, in fact, did you mean that now that they've done their in-court release of documents, you no longer contest the withholdings that were made? The former, Your Honor. We very much contest that the assessment is not exempt. Why haven't you raised those arguments in the alternative? We wanted to focus on the initial response of the agency, Your Honor. That is what is key here. They must give us the real reasons so we can have a meaningful administrative appeal. Yes, indeed, the assessment is not exempt, and certainly parts can be segregated out of it, but we want to focus on the initial response. The agency is doing this continuously. You have in the record 25 letters from Jill Eggleston. They keep doing this, even though one judge in the Aptu case said that parts of the assessment are easily segregable. That's what the judge said, but the agency continues to say nothing can be segregated. So we want to focus on the initial response. Mr. Baiola, I know he's obviously filed this FOIA request. Does he plan to file other FOIA requests, or is he a one-time FOIA filer? Most likely he's a one-time FOIA filer. However, he wants to file an administrative appeal. He wants to file an administrative appeal. He does. He wants to file a meaningful administrative appeal, and that's what he's after. If he can win this case, if they issue a new letter, he then will file an administrative appeal of the letter. Why would he file an appeal of a letter that's essentially been mooted by the fact that they took a whole new position in district court? I mean, they came in in district court and said, never mind that letter. Here's a more particularized assertion of exemptions, and here's some more documents we should have given you the first time. So what's the point of going back to appeal a letter? Or would you go back and exhaust their disclosure in district court? We believe that we possibly could win an administrative appeal. I don't see how they can fight us on a segregation issue. Congress says you must give the reasons, and we want to hear the reasons, and then we will make an administrative appeal. We think we can win. If we lose, then we'll come back to district court and ask for a ruling. The reasons means the reasons. That phrase is used in other places. When prosecutors make preemptory challenges of a juror, they must give the real reasons, not possible reasons. Employers must give the real reasons for adverse employment actions. The phrase, the reasons, is used in some cases. So is your argument that the reason you did not exhaust administratively yet is you didn't know what target to shoot after? Is that the point? I mean, why couldn't you be making the arguments you're making here in the administrative process? It's unfair to force the requester to make an administrative appeal when we have this, when we have the initial response. The initial response is very confusing. It says exemptions are applicable. It lists a large number of them. And it says under B-5, under this exemption, it may include materials prepared in contemplation of litigation. How do we appeal that? Is the assessment materials prepared in anticipation of litigation? It says B-6 is in the letter. Is the assessment exempt under B-6? How do we appeal? What would we say in the appeal? We'd have to argue. You would say you haven't made any particular issue. The same thing. This has to do with B-6. We win. You'd be making the same arguments you're making here, right? And isn't that the point of, one of the points of the administrative exhaustion? Those arguments get played out in detail here, there, before they're reviewed here. Well, in theory, Your Honor, that could happen. However, as Jill Eggleston pointed out, yes. Now, I'm sorry. What do you mean in theory that could happen? If you had, if in response to the letter you had exhausted your administrative remedies, what argument would you be making there that you're not making here? The same arguments, right? You're talking about the inadequacy of the response. That's true. You didn't do that. That's true, Your Honor. However, as Jill Eggleston pointed out, referring to the Anguamate case, if we had made an administrative appeal, then we would lack standing to complain about the initial response. So you want to bring a policy and practice challenge. I see. Indeed. Ms. Anguamate complained about the initial response. She filed an administrative appeal. And the judge, there's dicta in his opinion that he agrees this is wrong for these people to list a blunderbuss, a listing of possibilities. However, Ms. Anguamate, since you did the administrative appeal, forget about the initial response. We're going to go directly to the merits of these documents. So that decision that Jill Eggleston points out is binding on us. That's why we did not file an administrative appeal. We wanted to avoid that problem. We want the court to focus on the initial response. I think the DHS agrees the initial response is very defective. In regard to segregation, they say in their June 2015 brief at page 25, the agency must show with reasonable specificity why something cannot be segregated. At page 26, they say we must show a detailed justification for why you're not going to segregate something. Under that standard, their standard, the initial response fails. The initial response doesn't say anything useful about segregation. Does the appeal process have any jurisdiction or authority to address a policy or practice argument, or can that only be raised in district court? If you were to go back on the appeal, you could say, this letter, this time I don't know what you mean about B6. Could you also raise before the agency cut it out? You're doing it in all of these cases. This is ridiculous. You're not doing your job. You've got these boilerplate things where you're just spewing them out, and you're not making any effort whatsoever to provide specific exemption explanations. Could you do that before the agency? Perhaps, theoretically. I'm really asking, does the agency itself have jurisdiction to decide, does it have the authority to say not only did they not sufficiently substantiate the exemption in your case, but the practice here is invalid as well? I believe they might have that authority. We do have, in the record, six appeals, administrative appeals that we did make, resulting in nothing, resulting in short boilerplate denials. It's very unlikely the agency would do anything like that. I'm not sure of the jurisdiction of the agency. Well, I'm curious as to why you said you want to go back to the agency. If you have a policy or practice argument, then. I'm just confused about your, you can't trust their process as boilerplate, but I'm here fighting because I want to go back, I want my opportunity to have a real meaningful administrative process. If they reform their initial response, we have a better chance of a meaningful administrative appeal. I'm somewhat pessimistic, but I don't know if it's possible that they would actually read what the OP2 case said and they would come to a different result. It's possible. But you've said that your client is a one-time filer. Is that a problem for making a policy and practice argument? You've gotten what you wanted. You've gotten the documents you wanted. He's not directly making a policy and practice argument. He's making an argument for himself. He wants the opportunity to make it a meaningful administrative appeal. If the agency will rewrite its initial response, then he's able to do that. There's a chance. That's what he's asking for. He wants the right to a meaningful administrative appeal. I believe the agency agrees with me that nobody can make a meaningful administrative appeal based on this initial response. I think they'll agree with me on that. What would we say in the appeal? Do we have any chance of success? When the initial response says, Undescribed documents have no segregable portions. How can you appeal that? When the initial response says, Undescribed documents are sent elsewhere. How do we appeal that? Was the assessment sent to the Department of State or to the ICE? We don't know. So we appeal things we don't even know what we're talking about. The agency has the documents in his hand, in the file. They know exactly what they are. It is easy for them to say, We're going to, concerning this document, These are the reasons why you can't have this one. These are the reasons why this document has nothing that is segregable. By the way, we asked for the notes of the asylum officer. They say to us, The notes are entirely exempt under several exemptions. Nothing can be segregated out of the notes. Then, after the lawsuit, the notes come out. All of the notes are all of a sudden discoverable. Everything can be segregated. With respect to the position, So, put aside the letter. With respect to the disclosures they made in district court, And the exemptions they asserted in district court, Do you have the same objection? They're still withholding the assessment. And you want that. Indeed. Do you have the same sort of objection to the assertion of exemptions They've made in district court with respect to the assessment? It's a spoiler plate, or they didn't make a sufficient segregability analysis. Do you have either of those? Our better argument is the segregability argument. Why, indeed, can't something be segregated out of the assessment? The aptu court was able to do that. We have, in the record, ten assessments that I've gotten earlier. It's easy to segregate. I don't see why they say they can't. I think it's very annoying when they use the same nineteen words In the fifth sentence of twenty-five letters. That is, spoiler plate with a capital B. They're not trying to segregate. The fact that they use the exact same nineteen words, In our review of these pages, We have determined that they contain no reasonably segregable portions of non-exempt information. The same nineteen words, that means the computer is the instrument. I don't know about you, but I don't know why it was not in Mr. Bialik. He's not a repeat filer. Well, that's true, Your Honor. But the fact that they do this in twenty-five letters Is evidence of what they're doing inside the agency. Which is to say, they're not doing anything thoughtful. They're giving very little attention to this request. And they're answering with boilerplate. They're not even trying to fulfill the intent of Congress. And for the fact that they hand over the notes after the lawsuit is filed, It's annoying to me. We have to file lawsuits to get things they should give us. Why don't they give it to us promptly? Congress wants prompt disclosure of information And prompt disclosure of the reasons. And the agency is not trying hard to do this. And so I think they should be told, Follow what Congress said. Okay. Thank you very much. Mr. Bialik. Good morning, and may it please the court, Kenneth Adebonajah for the government. The issues before the court are Whether there remains a case or controversy And whether DHS's letter of December 17, 2013 Satisfied the statutory requirement As well as this court's ruling in Crewe v. FEC. And respectfully, the government submits That the answers to those questions are no and yes, respectively. Well, you just said that they're still fighting On a fight over the assessments. So they're trying, but they would prefer to fight They prefer to have all their opportunities to win. And so they would prefer to fight first Before the agency on a meaningful agency appeal. So they're not giving up on their request for the assessment Before a claim is not moot in that regard. They just want every shot they can have To try to get this thing disclosed, Both administratively and then judicially. Well, statutorily they had an opportunity to do that Because another name for what the plaintiff's relief That the plaintiff's actually asking for Is exhaustion, and Congress intended But I think the question is on a mootness. I think... I don't understand the response Because the question is one of... Your threshold argument is mootness. And I think we probably have to address mootness first. And as to mootness, if they're still seeking The underlying document, how is it moot? I'm sorry, I misunderstood the question, Your Honor. In the record, there's no... The record indicates that they've said That they're not challenging any withholdings. That's clear. That's replete. So if they're not challenging any withholdings... No, no, what they say is we're not now Because right now we're just trying to get our procedure. And then when we have our procedure... I mean, that's the first question I asked them. They used that word now in their brief. And that's a very important word, it turns out. Well, he would have been required To continue to allege that throughout the action In order for the action to remain a case on controversy. But they haven't. It's almost as if it's been waived or withdrawn. But if he continued... I'm sorry, go ahead. I think we may be saying the same thing. I don't understand, what if he specifically says I'm doing this sequentially. I just want to do step one first, and then step two second. Step two is that, yeah, there's a prospect Of getting the document at the end of the day. But step one is I want to go through this proceeding first. At that point, you may have some arguments on the merits. Maybe there's a problem with doing it that way. I don't know. But in terms of mootness, I'm not understanding How it can be moot because they decided to do it sequentially. Well, the statutory scheme, as this court looked at in Crewe, Says that you have to go through certain steps For the entire scheme to make sense. And so if they're not... If at some point during the litigation They're saying that we don't want the documents And the statute itself grants the court jurisdiction To either enjoin a withholding or order a production, And they're not alleging that, Then the action is, in essence, moot. I'm not sure I understand. But I don't think they're saying they don't want the documents. They're not... I think you're presuming that what they mean by Don't want the documents is we never want the documents. And as I understood the exchange with Judge Millett at the beginning, That's not what they're saying. They're not saying we don't ever want the documents. They're saying we're going to focus on the here and now For present purposes. And then we'll deal with that stuff later. But we're not abandoning the notion that we'd like to get the documents. In fact, this is all bound up in that We're just taking it one step at a time. Well, that was not the record before the district court. The district court ruled on the record it had, And it ruled that... Part of the district court's consideration Was that they said that they didn't want the documents. The statute does not permit them to choose whatever process they want. The statute has specific provisions about What you need to go through, What the government has to do after you file, Which happened in this case, And they have to go through that process. It seems a bit much, I guess, for the government To be hanging its hat on procedural regularity With respect to the exhaustion argument. How can you argue exhaustion When you chose to come into district court And essentially confess error on your initial letter And completely change what the FOIA decision is That's at issue in this case? We have a whole new letter? We have new disclosures? We have new exemption assertions? I don't understand what on earth the exhaustion argument is. Well, I disagree with that, Your Honor. There were no new... We stuck with the original... With regard to the assessment... I understand, but they were thinking a lot of things, Not just the assessment. And you made new disclosures, You made new exemption assertions, You made new explanations for prior exemption assertions, You dropped out some prior exemptions. It's a whole new decision. I don't know what he goes back to exhaust. Does he go back to exhaust the letter? Or does he go back to... You say it's not good, he needs to exhaust. Does that exhaustion appeal address the original letter, Or does it address your position in district court? He's required to exhaust the letter. Why does he exhaust the letter when you've completely displaced that FOIA decision? That's no longer the relevant FOIA decision. That makes no sense to me at all. I'm not sure I understand the question, Your Honor. Maybe I'm misunderstanding the record here. My understanding is there was the FOIA letter. Right. Had some disclosures. Had the very boilerplate language about exemptions. He files in court. And am I correct that you then came into... The government came into court and said, Oh, have some more documents, and here's a new letter, a new explanation, or a new explanation of what we're withholding and why we're withholding it, asserting new exemptions, abandoning some of the prior exemptions. Is that correct? That's not correct, Your Honor. Could you disclose any additional arguments after they filed suit in district court? Your Honor, initially there were 159 documents that were found responsive. Mr. Biala got 129 of those documents immediately, which is actually ahead of... Out of the whole. Some of those were in part. Yes, 10 of those documents were in part, which is actually ahead. That was a contemporaneous production. And then 10 documents were withheld. I believe 14 were referred. And of those 10 documents, the 10 documents constituted essentially the notes and the assessment. And after the litigation begun, as part of the process, we gave Mr. Biala the notes. But we stuck to the argument that the assessment is protected under B-5. We didn't change that. I understand, but when he filed the lawsuit, he was filing for the assessment and the notes and a particularized explanation of exemptions and a particularized explanation of segregability. And you came into court and said, whoops, you're right, he is entitled to the notes. You gave him the notes, correct? Correct. Okay, so that's a different FOIA decision than the one the agency initially made. And when you did that, you also provided a more particularized explanation of the exemptions, did you not? Or was it boilerplate in district court? No, it wasn't boilerplate, Your Honor. It was more particularized. That's a different... It wasn't boilerplate, Your Honor. The letter said that... It mentioned pre-decisional. Mr. Biala wants a specific... Wanted the letter to say what he wants it to say, which is deliberative process. But the letter did say pre-decisional. But that's not the point. The point is that you, in that letter, in the original administrative letter, you said you couldn't disclose the notes. Correct. Even though you had already taken a position in litigation that those things were disclosable and would not be subject to protection under B-5. I don't care whether you call it pre-decisional or deliberative process, B-5, and yet you were asserting B-5 to protect the very notes. But once you got to court, you said, whoops, those things, of course you can have those. But, Your Honor, doesn't that highlight the reason why he should have exhausted in the first place? Because perhaps if he had exhausted, the process, he would have given OIP an opportunity... Sorry, not OIP. The appeal entity an opportunity to say, well, you know, in light of recent decisions or whatever, you can have the notes, but you can't have the assessment because we know of no law that permits that. That's a great argument. Had you shown up in district court and said that, that would be fine. But once you came to district court and said, anyhow, that's no longer our FOIA position in this case. Here's our new FOIA position in this case. He gets the notes. We've got more particularized exemptions. We're dropping some out. We're adding some in. That's the new decision. That's the decision. I mean, it would make no sense to go back and fight about the notes on the appeal because he's got them. We've got a new FOIA decision in district court. I'm sorry, Your Honor. Your Honor, I disagree that it's a different decision. It's the same decision. He did get the notes, but it's the same decision as is customary in FOIA litigation that the statute only requires A6A1 requires, as this court said in crude, to just give reasons, give an idea of what the documents are and give some reasons. And that's what was done at the time. And subsequently, the agency decided that it was okay to have the notes but stuck to its position. So we don't concede that. All right. So just to be clear, then, your position is if we were to say he failed to exhaust and needs to go back and exhaust, that exhaustion appeal should be about the original letter and not about the status of what's been disclosed and what has been withheld now. If he was required to exhaust, first of all, had he exhausted, the process of him getting the notes could have happened. I got that. But you all made a strategic decision in this court. At this point, if he were required to exhaust, the exhaustion issue would be about the assessment. Just about the assessment. Right, because that's the only thing you all left quiet about, as I understand it. That's the only thing left, your Honor. Right. Are you aware of any case where someone has been required to administratively exhaust an agency decision first announced in district court? Well, your Honor. Not the agency decision that was made administratively? Your Honor, that's just a creature of the way that he's chosen to go around the statute. Had he just exhausted, this anomaly would not have happened. He probably, what has happened so far, essentially what has happened is that the district court and this court, essentially, the exhaustion process for him. And had he done that earlier, that situation might not have presented itself. I know, but he's going to say, had you made the same decision you made in district court originally, instead of this thing where you just cut and paste for 20 letters at a time, we wouldn't be here either. So that's sort of... Your Honor, we don't... The question is whether just as a matter of law, exhaustion can still be argued when the government has changed the content of the original agency decision in district court. I just don't know the answer to that. I couldn't find cases where that had happened. Your Honor, I... If FOIA requests are coming in, and they're essentially requests for the assessment or the notes, it stands to reason that the responses to those requests would be fairly similar. I don't think that there's anything much to be taken from the fact that responses have some similar language, and I wouldn't call that boilerplate, Your Honor. Well, it might be similar. It's going to depend on the requester. If a news organization asks for it, you're going to have a lot more privacy exemptions than if the individual who's actually the subject of the immigration proceeding is the one that asks for it. Aren't you? I believe that what was submitted or what's in the record is that the private individual has requested. No, I understand. But so, in fact, you could have... It's not going to be... In that case, it would be a different requester, correct. Tell me how this works. Why wasn't it the case that the subsequent explanation that was given, the one that was given in district court, why wasn't that given in the first instance? What's the reason for it? Why weren't the... Why wasn't the initial response to the request... Why didn't it look more like the explanation that was given in the district court, the judge Millett's been talking about? It's more fulsome. Obviously, more work and care and attention to detail has gone on. Why wasn't that done in the first instance? Your Honor, my only answer to that is that Congress's intent was for the requester to get two bites at the apple. And had he done that, that may very well be what would have happened. And that happens all the time. That happens... That makes it sound like you're saying, so the way the system is set up is that the agency gives boilerplate the first time, and then we go to the administrative procedure, and that's where we really duke it out, and that's where we get serious about finding out what's segregable or not. That's what it sounds to me like you're saying. No, Your Honor. I'm asking why wasn't the second response, the one that's more satisfying, the one that... The proper. Yeah, the proper. Thank you. Why wasn't that done in the first instance instead of waiting to the district court? I understand your... I think your point is you didn't choose the form of the district court, right? You didn't choose it. You gave a response there because that was the question in front of you. My only question is why did the agency wait until then? Why wasn't that the initial response that the agency gave? Is it a question of manpower or personnel, the statutory time period too short? Why? Your Honor, it's my understanding that the agency has recently taken a position on notes as a result of some litigation, and that's perfectly within their purview to do that, and that's essentially the only difference besides your characterization, Your Honor. So you're saying there was a change in policy by the agency between the first and second?  The timeline was your change in position was before the first letter. Pardon, Your Honor? I believe the change in position was before the first letter. I can't say for certain, Your Honor, but at some point recently the agency has released notes, and I think that that's perfectly within the agency's purview to do that, but again, I hate to sound like a broken record. The change in position was February 11, 2013, and your first FOIA response was December 17, so it was 11 months later? I'm sorry, Your Honor. Your first FOIA letter of a two-pager was, I think, about 11 months after the change in position. Isn't that enough time to process it? Particularly because the change in position said this will be effective in three months. Your Honor, I can't answer the question as to why. I think I've answered the question, but I don't know what the answer is with regard to the timeline. But I think, again, we're getting further down the road than we should be. This is a lot simpler, a lot easier than it has turned out to be. Had he taken the opportunity that the statute gives him, and this court has said in Avocado Plus that it owes deference to congressional intent with regard to exhaustion, that had he just followed that process, there's a good chance we wouldn't be here. And this change in position is so slight with regard to the notes. The real issue is the assessment that he wants, and there's been no change in position with regard to that. I don't think he gets to decide what the real issue is. I think he gets to decide what he wants, and he wants them both, right? Well, he got one, but this assessment is still contested. And he hasn't argued anything with regard to the propriety of the agency's withholdings under B-5 in the district court. He posited no arguments. That's because he wants his chance to fight that before the agency. Is he entitled to fight that before the agency? To fight for the assessment? Yes, he is. That's what the exhaustion process is all about. And perhaps, as we see with the notes, how the notes issue was handled, perhaps, you know, I don't know that he would have gotten the assessment had he gone through the exhaustion process. But that's what the process is supposed to serve. He's supposed to be required to go through that process, and for good reason, too. In order for there to avoid prematurely seeking judicial review, for there to be a proper administrative record, and to allow the agency to exercise its discretion, those are the purposes. Do you know as a practical matter, does this happen, that the shape of what's at issue changes when litigation ensues? But then there's an exhaustion requirement that wasn't satisfied, and so you go back to exhaust, and then everything just gets reconfigured based on what happens in litigation so that you only litigate the open issues? Is that something that actually happens as a matter of practice? I don't think so, Your Honor. I don't think that litigation necessarily changes the way that the agency reviews FOIA requests. But the nature of litigation is that the agency has to provide a more robust explanation of the decisions it's made. Oh, yeah. No, I guess I'm talking about what would happen down the road under your approach to this case. So what you'd say is that the district court should be affirmed. Correct. And then once that gets affirmed, then we have an exhaustion issue to deal with before the agency. That would be the remedy that Congress intended for him to have. Right, and I guess I'm just asking as a practical matter, does this sequence of events happen in the real world where when you go back then to think about what happens before the agency, it turns out the state of play has changed because of what happened in litigation. And so then you start thinking about exhausting the thing that should have been exhausted before. It's no longer that thing anymore. It's something new. And I take it what you were suggesting is that, well, then what should happen is it automatically kind of gets updated. So that all that's left at issue is the assessment. And I'm just wondering, does that actually happen? Because, okay, well, because this is an anomaly, that's what it's turned out to be. I can't cite any specific examples, Your Honor. In our experience, you don't know of situations that have unfolded in this way. I don't have any specific reference, but that's what would happen. And in this case, the exhaustion process would be about the assessment, I believe. Anybody, any procedural barrier to him going back and exhausting at this point? Or could he still go back? If you were to say, oops, you should have exhausted, then he could go back and exhaust. And I guess maybe the process could figure out what exactly he's supposed to exhaust at this point. I don't know anything, Your Honor. I'm not aware of anything that would prevent that from happening. Great. Thank you very much. Thank you. You have two minutes. The case is not moved. The district court so held, A444, and there's been no cross-appeal. He says he gave us 159 documents. He photocopied copies of the asylum application. They gave us documents we didn't ask for. We asked for the notes and the assessment. They didn't give them to us. Well, you asked for notes, assessment, and all other documents about his application. They were not given to the asylum officer. He was not given by the applicant. They gave us back photocopies of our own application, wasting their own time as well as ours. Jill Eggleston wrote the initial response. And then she's the one who later gave the fuller response, changing things around. So she knows what's going on. And, Your Honor, Judge Griffith, a good question by you, which he didn't answer. How come Jill Eggleston didn't give the knowledge that she had in the initial response? Instead, she gives false information. The district court said what the agency said in this initial response is not relevant. You know, we've been somewhat characterized our case law on exhaustion as requiring a really low bar for the agency, right? They just need to give some minimum reasons for excluding the documents and then notice of appeal. Some would criticize that as being quite lax. Why can't you say they fall within that here? Not as careful as you would like or as they eventually came around to, but aren't you asking us to hold them to a much higher standard than we've ever required before? Your Honor, I'm asking you to make them follow what Congress said. Congress said give the reasons. That means the real reasons, not a list of possibilities. It seems very easy for me for them to do that. I don't know. It's easy. Why don't they do it? In the 129 documents you received, did you receive anything you didn't already have that you had in your shelf filed with the government? Yes. Yes, we have a few pages of computer printouts that were meaningless and not important. Great. Thank you very much. The case is submitted.
judges: Griffith, Srinivasan, Millett